Heinz J. Mahler - USB # 3832
Scott C. Powers - USB # 10976
KIPP AND CHRISTIAN, P.C.
10 Exchange Place, 4th Floor
Salt Lake City, Utah 84111
Telephone: (801) 521-3773
hjmahler@kippandchristian.com
spowers@kippandchristian.com

Steven Plitt
Joshua D. Rogers
KUNZ PLITT HYLAND
DEMLONG & KLEIFIELD
3838 North Central Avenue, Suite 1500
Phoenix, Arizona 85012-1902
Telephone: (602) 331-4600
sp@kunzlegal.com; jdr@kunzlegal.com

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| COLORADO CASUALTY INSURANCE COMPANY, a Colorado corporation,<br><br>Plaintiff,<br><br>vs.<br><br>PERPETUAL STORAGE, INC., a California corporation; UNIVERSITY OF UTAH, a body politic and corporate of the State of Utah , on behalf of its UNIVERSITY OF UTAH HOSPITALS AND CLINICS and UNIVERSITY OF UTAH HEALTH SCIENCES CENTER,<br><br>Defendants. | Case No.: 2:10-cv-00316 DAK [Judge Dale A. Kimball]<br><br>**FIRST AMENDED COMPLAINT** |

Plaintiff, Colorado Casualty Insurance Company (hereinafter "Colorado Casualty"), for its First Amended Complaint against Defendants alleges as follows:

1. This action is brought pursuant to 28 U.S.C. § 2201 *et seq.*, the Federal Declaratory Judgment Act.

2. Plaintiff Colorado Casualty is a Colorado corporation with its principal place of business in Colorado and is authorized to do business in the State of Utah.

3. Based upon information and belief, Perpetual Storage, Inc. (hereinafter "Perpetual Storage") is a California corporation with its principal place of business in Utah.

4. Based upon information and belief, the University of Utah (hereinafter "the University") is a body politic and corporate of the State of Utah, with its principal place of business in Utah.

5. This Court has jurisdiction over the parties and subject matter of this litigation pursuant to 28 U.S.C. §1332, because there is diversity of citizenship and more than $75,000 is in controversy.

6. The alleged acts giving rise to this suit all occurred within the District of Utah. For that reason, and also because Perpetual Storage and the University both have their principal place of business within the District of Utah, venue is proper in this Court pursuant to 28 U.S.C. § 1391.

7. Colorado Casualty Insurance Company issued commercial package policy, Policy No. CPP 430653707, to Perpetual Storage with a policy term running from May 31, 2008 to May 31, 2009, attached hereto as Exhibit "A". Colorado Casualty Insurance Company also issued commercial liability umbrella policy, Policy No. CUP4300125, to Perpetual Storage with a policy term running

from May 31, 2008 to May 31, 2009, attached hereto as Exhibit "B" (hereinafter collectively referred to as the "Policies").

8.     Based upon information and belief, the University and Perpetual Storage entered into a Record Storage Agreement effective December 6, 1996 ("Storage Agreement") which provided that Perpetual Storage would store certain records, including hardcopies, microfilm, microfiche, and magnetic computer tape on behalf of the University in exchange for payment.

9.     Based upon information and belief, the University owns and operates the University of Utah Hospitals and Clinics ("UUHC") and the University of Utah Health Sciences Center ("UUHSC").

10.     Based upon information and belief, UUHC and UUHSC together include several hospitals such as the main University Hospital, Huntsman Cancer Institute, Huntsman Cancer Hospital, the Moran Eye Center, the University Orthopaedic Center, numerous outlying clinics, and a group of approximately 1,000 physicians, and several thousand additional licensed health case providers such as nurses and social workers.

11.     Based upon information and belief, UUHC and UUHSC maintain records, including electronic records, of patients treated at UUHC and UUHSC. Based upon information and belief, these electronic records are regularly backed up onto backup tapes for data recovery purposes and stored offsite by Perpetual Storage.

12.     The University alleges that patient records contain demographic information on patients such as name and address as well as billing and diagnostic information, and in mist cases social security numbers.

13.     Based upon information and belief, Perpetual Storage made pickups at the University of backup storage tapes owned by the University.

Case 2:10-cv-00316-DAK Document 35 Filed 06/18/10 Page 4 of 24

14.     Based upon information and belief, on or about June 1, 2008, an employee of Perpetual Storage picked up backup storage tapes at the University.

15.     The University alleges that the backup storage tapes picked up by Perpetual Storage on June 1, 2008 contained identifying information for approximately 1.7 million University patients and guarantors, covering a time period for approximately 16 years.

16.     The University alleges that approximately 1.1 million names on the backup storage tapes picked up by Perpetual Storage on June 1, 2008 were associated with social security numbers and all approximately 1.7 million names were associated with protected health information.

17.     Based upon information and belief, on or about June 1, 2008, the backup storage tapes picked up by an employee of Perpetual Storage were stolen from the employee's personal vehicle (the "Incident").

18.     The University alleges that as a result of the Incident, it issued personal letters to each of the affected individuals at its own expense to notify these individuals of the compromise to their medical or financial information.

19.     The University alleges that as a result of the Incident, it had to establish both in-house and external calling centers to handle the massive influx of calls from concerned individuals.  The University alleges that it responded to or outsourced more than 11,000 phone calls related to the Incident during a two-week period during the summer of 2008.

20.     The University alleges that as a result of the Incident, it offered, at its own expense, one-year free credit monitoring to any individual whose social security number had been compromised.

21.     The University alleges that as a result of the Incident, it expended at least 6,232 personnel hours in responding to this Incident.

22.    Based upon information and belief, on or about July 1, 2009, law enforcement officials recovered the stolen backup storage tapes.

23.    The University alleges that as a result of the Incident, it has expended $3,354,753.00 in relation to this Incident, consisting of: (1) $2,483,057.00 related to credit monitoring expenses; (2) $646,149.00 related to printing and mailing costs; (3) $81,389.00 related to phone bank costs; and (4) $144,158.00 in miscellaneous costs.

24.    The University has demanded that Perpetual Storage reimburse the University for the amounts of money it allegedly expended as a result of the Incident.

25.    Perpetual Storage has made a demand upon Colorado Casualty to defend and provide coverage for the allegations being made by the University against Perpetual Storage in relation to the Incident.

26.    Colorado Casualty Insurance Company Policy No. CPP 430653707 (the "Primary Policy") provides in part:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

\* \* \*

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.    **Insuring Agreement**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion,

investigate any "occurrence" and settle any claim or "suit" that may result. ...

\* \* \*

b.　　This insurance applies to "bodily injury" and property damage" only if:

(1)　　The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)　　The "bodily injury" or "property damage" occurs during the policy period; and

(3)　　Prior to the policy period, no insured listed under Paragraph **1.** of Section **II –** Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c.　　"Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II. –** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of the "bodily injury" or "property damage" after the end of the policy period.

d.　　"Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II. –** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

6

    **(1)**    Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    **(2)**    Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    **(3)**    Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

\* \* \*

**2.**    **Exclusions**

This insurance does not apply to:

\* \* \*

**g.**    **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

\* \* \*

**j.**    **Damage To Property**

"Property damage" to:

\* \* \*

    **(4)**    Personal property in the care, custody or control of the insured;

7

Case 2:10-cv-00316-DAK Document 35-1 Filed 06/18/10 Page 8 of 24

\* \* \*

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

1.  **Insuring Agreement**

    a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. …

    \* \* \*

2.  **Exclusions**

    \* \* \*

    f.   **Breach Of Contract**

       "Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

    \* \* \*

## SECTION V – DEFINITIONS

    \* \* \*

3.  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

    \* \* \*

13.  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    a. False arrest, detention or imprisonment;

    b. Malicious prosecution;

    c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d. Oral or written publication, in any manner, of materials that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

    f. The use of another's advertising idea in your "advertisement"; or

    g. Infringing upon another's copyright, trade dress or slogan in your "advertisement."

* * *

17. "Property damage" means:

    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data

processing devices or any other media which are used with electronically controlled equipment.

\* \* \*

## BUSINESS AUTO COVERAGE FORM

\* \* \*

## SECTION II – LIABILITY COVERAGE

**A.    Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

\* \* \*

**B.    Exclusions**

\* \* \*

**6.    Care, Custody or Control**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

## SECTION V – DEFINITIONS

**A.**    "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

\* \* \*

**C.**    "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

\* \* \*

**M.**    "Property damage" means damage to or loss of use of tangible property.

10

Case 2:10-cv-00316-DAK Document 35-1 Filed 06/18/10 Page 11 of 24

* * *

# WAREHOUSE OPERATOR'S LEGAL LIABILITY COVERAGE

## AGREEMENT

In return for "your" payment of the required premium, "we" provide the coverage described herein subject to all the "terms" of the Warehouse Operatprs Legal Liability Coverage. This coverage is also subject to the "declarations" and additional policy conditions relating to assignment or transfer of rights or duties, cancellation, changes or modifications, inspections, and examination of books and records.

Endorsements and schedules may also apply. They are identified on the "declarations".

Refer to Definitions for words and phrases that have special meaning. These words and phrases are shown in quotation marks or bold type.

## DEFINITIONS

* * *

3.      "Covered location" means a location or premises described on the "declarations".

* * *

15.     "Warehouse receipt" means the receipt issued by "you" to "your" customer acknowledging that property is being stored at "your" warehouse and includes:

      a.      a description of the property;

      b.      the weight or number of units being stored; and

      c.      the limited liability assumed by "you".

## COVERAGE

"We" cover "your" legal liability for loss to covered property while under your care, custody, and control. Loss which "you" become legally obligated to pay as a warehouse operator under a "warehouse receipt" issued by "you".

**Defense Costs** – "We" have the fight and duty to defend any "suit" brought against "you" because of loss to covered property. "We" may investigate and settle a claim or a "suit". "We" do

11

not have to provide a defense after "we" have paid the "limit" as a result of a judgment or written settlement.

\* \* \*

**PROPERTY COVERED**

"We" cover direct physical loss caused by a covered peril to property of others described in "your" "warehouse receipt" while stored at a "covered location".

\* \* \*

**PROPERTY NOT COVERED**

\* \* \*

10.     **Property in Transit** – "We" do not cover property in transit. This includes property that is held as storage-in-transit under a bill of lading.

\* \* \*

12.     **Property Not Under a Warehouse Receipt** – "We" do not cover property for which no warehouse receipt has been issued.

\* \* \*

**PERILS COVERED**

"We" cover risks of direct physical loss unless the loss is limited or caused by a peril that is excluded.

27.     Colorado Casualty Insurance Company umbrella Policy No. CUP4300125 (the "Umbrella Policy") provides in part:

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.     **Insuring Agreement**

We will pay on behalf of the "Insured" for the "Ultimate Net Loss" is excess of the "Retained Limit" because of "Bodily Injury" or "Property Damage" to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SECTION II – DEFENSE

AND SUPPLEMENTARY PAYMENTS – COVERAGES A and B.

\* \* \*

**b.** **Other than Claims Made Insurance**

This insurance applies to "bodily injury" or "property damage" covered by any "underlying Insurance" written on other than a claims made basis which would apply but for the exhaustion of its limits but only if such "bodily injury" or "property damage" occurs during the policy period of this policy, and it is agreed that:

(1) Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

(2) "Property damage" that is loss of use of tangible property that is not physically injured shall be deemed to occur at the time of the "occurrence" that caused it.

"We" have the right to defend any "claim" or "suit" against the "Insured" seeking damages for "bodily injury" or "property damage" to which this insurance applies but:

(1) The amount "we" will pay for "Ultimate Net Loss" is limited as described in SECTION IV – LIMIT OF INSURANCE;

(2) At "our" discretion, "we" may investigate any "occurrence" and settle any "claim" or "suit" that may result;

(3) We have a duty to defend any "claims" or "suits" not covered by any "Underlying Insurance" shown in the Declarations; we also have the duty to defend such claims or suits if the applicable limit of "Underlying Insurance" is used up; but

(4) Both "our" right and duty to defend any existing or future "suits" end when "we" have used up the applicable Limit of

Insurance in payment of judgments or settlements under Coverages A or B.

c.      In any event, the "bodily injury" or "property damage" must be caused by an "occurrence" and the "occurrence" must take place in the "coverage territory".

\* \* \*

## COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

**1.**     **Insuring Agreement**

"We" will pay on behalf of the "Insured" for "ultimate Net Loss" in excess of the "Retained Limit" because of "personal injury" or "advertising injury" to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SECTION II – DEFENSE AND SUPPLEMENTARY PAYMENTS – COVERAGES A and B.

\* \* \*

**b.**     **Other than Claims Made Insurance**

This insurance applies to "personal injury" or "advertising injury" covered by any "Underlying Insurance" written on other than a claims made basis which would apply but for the exhaustion of its limits but only if such "personal injury" or "advertising injury" occurs during the policy period of this policy.

"We" will have the right to defend any "claim" or "suit" seeking damages for "Personal injury" or "advertising injury" to which this insurance applies, but:

(1)     The amount "we" will pay for "Ultimate Net Loss" is limited as described in SECTION IV – LIMIT OF INSURANCE;

(2)     At "our" discretion, "we" may investigate and settle any "claim" or "suit";

       (3)     We have a duty to defend any "claims" or "suits" not covered by any "Underlying Insurance" shown in the Declarations or by any other insurance; we also have the duty to defend such claims or suits if the applicable limit of "Underlying Insurance" is used up; but

       (4)     Both "our" right and duty to defend any existing or future "suits" end when "we" have used up the applicable Limit of Insurance in payment of judgments or settlements under Coverages A or B.

  c.    This insurance applies to "personal injury" only if it is caused by an "offense":

       (1)     Arising out of the conduct of "your" business, excluding advertising, publishing, broadcasting or telecasting done by or for "you".

  d.    This insurance applies to "advertising injury" only if caused by an "offense" committed:

       (1)     In the course of advertising "your" goods, products or services.

  e.    The "personal injury" or "advertising injury" must be caused by an "offense" and the "offense" must be committed in the "coverage territory".

* * *

## SECTION VII – DEFINITIONS

1.    "Advertising Injury" means injury arising out of one or more of the following "offenses":

  a.    Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

  b.    Oral or written publication of material that violates a person's right of privacy;

  c.    Misappropriation of advertising ideas or style of doing business; or

d.    Infringement of copyright, title or slogan.

\* \* \*

3.    "Automobile Hazard" means liability arising out of the ownership, maintenance, repair, use, loading or unloading of any "auto".

4.    "Bodily injury" means bodily injury, sickness, disease, shock, fright, mental injury or disability sustained by a natural person, including death resulting from any of these at any time.

\* \* \*

11.    "Occurrence" means

    a.    with respect to "Bodily Injury" or "Property Damage", an accident, including continuous or repeated exposure to substantially the same general harmful conditions; or

    b.    with respect to employees of the "Named Insured", "Bodily Injury" caused by an accident or disease.

12.    "Offense" means any of the "offenses" included in the definitions of "Advertising Injury" or "Personal Injury".

13.    "Personal Injury" means injury, other than "bodily injury", arising out of one or more of the following "offenses":

    a.    False arrest, detention or imprisonment;

    b.    Malicious prosecution;

    c.    Wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies;

    d.    Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

    e.    Oral or written publication of material that violates a person's right of privacy.

\* \* \*

16

16.    "Property Damage" means:

    a.    Physical injury to tangible property, including all resulting loss of use of that property; or

    b.    Loss of use of tangible property that is not physically injured.

\* \* \*

17.    "Retained Limit" means the greater of:

    a.    That amount of "underlying Insurance" applicable to any "claim" or "suit", whether such "Underlying Insurance" is collectible or not; or

    b.    the amount of "Self-Insured Retention" as shown in Item 3 (A) (2). of the Declaration of this policy.

\* \* \*

23.    "Underlying Insurance" means the coverage(s) afforded under insurance policies designated in Schedule A of "Underlying Insurance" of the Declarations page of this policy. "Underlying Insurance" also includes any other insurance available to the "Insured", except such insurance as may be purchased to apply specifically in excess of this policy.

24.    "Ultimate Net Loss" means the total amount of damages for which the "Insured" is legally liable in payment of "bodily injury", "property damage", "personal injury", or "advertising injury". "Ultimate Net Loss" may be established by adjudication, arbitration, or a compromise settlement to which "we" have previously agreed in writing. "Ultimate Net Loss" shall be reduced by any recoveries or salvages which have been paid or will be collected, but the amount of "Ultimate Net Loss" shall not include any expenses incurred by an "Insured", by "us" or by any "underlying insurer".

\* \* \*

## AUTO LIABILITY LIMITATIONS

U 5395 (1/88)

THIS ENDORSEMENT MODIFIES THE INSURANCE PROVIDED UNDER THE COMMERCIAL LIABILITY

UMBRELLA POLICY. THE FOLLOWING SUPERSEDES ANY PROVISIONS TO THE CONTRARY.

IT IS AGREED THAT THIS INSURANCE DOES NOT APPLY TO ANY LIABILITY FOR "BODILY INJURY" OR "PROPERTY DAMAGE" ARISING OUT OF AN "AUTOMOBILE HAZARD" UNLESS:

a)      SUCH LIABILITY IS COVERED BY VALID AND COLLECTIBLE "UNDERLYING INSURANCE" AS SHOWN IN SCHEDULE A; AND

b)      ONLY FOR "BODILY INJURY" OR "PROPERTY DAMAGE" ARISING OUT OF AN "AUTOMOBILE HAZARD" WHICH IS COVERED UNDER THE "UNDERLYING INSURANCE."

\* \* \*

FOLLOWING-FORM ENDORSEMENT

U5801

IT IS HEREBY AGREED THAT THIS POLICY SHALL NOT APPLY TO ANY LIABILITY UNLESS SUCH LIABILITY IS COVERED BY VALID AND COLLECTIBLE UNDERLYING INSURANCE AS DESCRIBED IN THE SCHEDULE OF UNDERLYING INSURANCE, AND THEN ONLY FOR SUCH HAZARDS FOR WHICH COVERAGE IS AFFORDED UNDER SAID UNDERLYING INSURANCE.

\* \* \*

PERSONAL PROPERTY CCC EXCLUSION

IT IS AGREED THAT THIS POLICY SHALL NOT APPLY TO ANY LIABILITY FOR PROPERTY DAMAGE TO PERSONAL PROPERTY.

(1)      OWNED OR OCCUPIED BY OR RENTED TO THE INSURED.

(2)      USED BY THE INSURED, OR:

(3)      IN THE CARE, CUSTODY OR CONTROL OF THE INSURED OR AS TO WHICH THE INSURED IS FOR ANY PURPOSE EXERCISING PHYSICAL CONTROL.

28.     Under COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY of the Primary Policy, the claims made by the University in relation to the Incident do not constitute "bodily injury" or "property damage" as those terms are defined by the Primary Policy.

29.     Under COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY of the Primary Policy, exclusion g., the "Aircraft, Auto Or Watercraft" exclusion, applies to preclude coverage for the claims made by the University in relation to the Incident.

30.     Under COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY of the Primary Policy, exclusion j.(4), the "Care, Custody or Control" exclusion, applies to preclude coverage for the claims made by the University in relation to the Incident.

31.     Under COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY of the Primary Policy, the claims made by the University in relation to the Incident do not constitute "personal and advertising injury" as that term is defined by the Primary Policy.

32.     Under COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY of the Primary Policy, exclusion f., the "Breach Of Contract" exclusion, applies to preclude coverage for the claims made by the University in relation to the Incident.

33.     Under the BUSINESS AUTO COVERAGE FORM of the Primary Policy, the claims made by the University in relation to the Incident do not constitute "bodily injury" or "property damage" as those terms are defined by the BUSINESS AUTO COVERAGE FORM of the Primary Policy.

34.     Under the BUSINESS AUTO COVERAGE FORM of the Primary Policy, exclusion 6, the "Care, Custody or Control" exclusion, applies to preclude coverage for the claims made by the University in relation to the Incident.

35.    Under the WAREHOUSE OPERATOR'S LEGAL LIABILITY COVERAGE of the Primary Policy, the claims made by the University in relation to the Incident do not involve loss to covered property as described by the BUSINESS AUTO COVERAGE FORM of the Primary Policy.

36.    Under the WAREHOUSE OPERATOR'S LEGAL LIABILITY COVERAGE of the Primary Policy, the claims made by the University in relation to the Incident do not involve direct physical loss caused by a covered peril to property of others described in Perpetual Storage's "warehouse receipt" while stored at a "covered location".

37.    Under the WAREHOUSE OPERATOR'S LEGAL LIABILITY COVERAGE of the Primary Policy, the claims made by the University in relation to the Incident do not involve a "warehouse receipt" issued by Perpetual Storage as that term is defined by the WAREHOUSE OPERATOR'S LEGAL LIABILITY COVERAGE of the Primary Policy.

38.    Under the WAREHOUSE OPERATOR'S LEGAL LIABILITY COVERAGE of the Primary Policy, exclusion 10, the "Property in Transit" exclusion, applies to preclude coverage for the claims made by the University in relation to the Incident.

39.    Under the WAREHOUSE OPERATOR'S LEGAL LIABILITY COVERAGE of the Primary Policy, exclusion 12, the "Property Not Under a Warehouse Receipt" exclusion, applies to preclude coverage for the claims made by the University in relation to the Incident.

40.    Under the WAREHOUSE OPERATOR'S LEGAL LIABILITY COVERAGE of the Primary Policy, the claims made by the University in relation to the Incident do not involve risks of direct physical loss as described by the BUSINESS AUTO COVERAGE FORM of the Primary Policy.

41.     Under COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY of the Umbrella Policy, the claims made by the University in relation to the Incident do not constitute "Bodily Injury" or "Property Damage" as those terms are defined by the Umbrella Policy.

42.     Under COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY of the Umbrella Policy, the claims made by the University in relation to the Incident do not constitute "personal injury" or "advertising injury" as those term are defined by the Umbrella Policy.

43.     Under the AUTO LIABILITY LIMITATIONS endorsement to the Umbrella Policy, the claims made by the University in relation to the Incident do not arise out of an "automobile hazard" which is covered under the "underlying insurance".

44.     Under the FOLLOWING-FORM ENDORSEMENT to the Umbrella Policy, there is no coverage under the Umbrella Policy because there is no coverage afforded under the "underlying insurance".

45.     Under the Umbrella Policy, the PERSONAL PROPERTY CCC EXCLUSION endorsement applies to preclude coverage for the claims made by the University in relation to the Incident.

46.     Colorado Casualty is not obligated under the Policies to defend Perpetual Storage against the claims made by the University in relation to the Incident.

47.     There is no coverage for Perpetual Storage under the Policies for the claims made by the University in relation to the Incident.

48.     Colorado Casualty is not obligated under its Policies to indemnify Perpetual Storage for any part of any judgment awarding damages in favor of the University that the University may obtain in relation to the Incident.

49.    Colorado Casualty is not obligated under its Policies to pay or otherwise satisfy any judgment the University may obtain against Perpetual Storage in relation to the Incident.

50.    Colorado Casualty is entitled to a judgment against Perpetual Storage declaring that there is no coverage under the Colorado Casualty Policies for the damages alleged by the University in relation to the Incident.

51.    A justiciable controversy exists as to whether or not Colorado Casualty's Policies provide coverage for the claims made by the University against Perpetual Storage and, therefore, Colorado Casualty does hereby request that this Court exercise its jurisdiction under 28 U.S.C. § 2201 *et seq.*, the Federal Declaratory Judgment Act, to adjudicate and declare Colorado Casualty's obligations under the Colorado Casualty Policies.

**WHEREFORE**, Plaintiff Colorado Casualty Insurance Company prays for judgment against Defendants adjudicating and declaring:

1.    That the Colorado Casualty Policies do not provide coverage for the claims made against Perpetual Storage by the University in relation to the Incident;

2.    That Colorado Casualty is not obligated to indemnify or pay any judgment or award of damages against Perpetual Storage in relation to the Incident;

3.    That Colorado Casualty does not have an obligation to defend Perpetual Storage against the claims made by the University in relation to the Incident; and

4.    For such other further relief as the Court deems just.

/ / /

DATED this 17th day of June, 2010.

_____

Heinz J. Mahler
Scott C. Powers
KIPP AND CHRISTIAN, P.C.

Steven Plitt
Joshua D. Rogers
KUNZ PLITT HYLAND DEMLONG &
KLEIFIED

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

This is to certify that the foregoing was filed with the Court through via the court's ECF system this 18th day of June, 2010, and was served through via the court's ECF system this same date to the following:

Steven R. McMurray
Scott M. Petersen
Sara E. Bouley
FABIAN & CLENDENIN,
A Professional Corporation
215 South State Street, Suite 1200
Salt Lake City, UT 84111-2323
smcmurray@fabianlaw.com
spetersen@fabianlaw.com
sbouley@fabianlaw.com
*Attorneys for Perpetual Storage, Inc.*

Alan L. Sullivan
Kamie F. Brown
SNELL & WILMER L.L.P.
15 West South Temple, Suite 1200
Beneficial Tower
Salt Lake City, Utah 84101-1004
asullivan@swlaw.com
*Attorneys for Defendant University of Utah, on*
*behalf of University of Utah Hospitals and Clinics*
*and University of Utah Health Sciences Center*

Dennis R. James
Brian H. Hess
MORGAN, MINNOCK, RICE & JAMES, L.C.
Kearns Building, Eighth Floor
136 South Main Street
Salt Lake City, Utah 84101
djames@mmrj.com
*Attorneys for Third-Party Defendants Ron B. Sutherland*
*and United Insurance Services, Inc.*

Laura S. Evans, Legal Secretary
Kipp and Christian, P.C.